# ATLANTIC RICHFIELD COMPANY,
for itself and on behalf of certain
combined subsidiaries

*v.*

# DEPARTMENT OF REVENUE
(TC 3736)

Henry C. Breithaupt, Stoel Rives, Portland, represented plaintiff (ARCO).

James. C. Wallace, Assistant Attorney General, Department of Justice, Salem, represented defendant (department).

Decision for plaintiff rendered November 17, 1995.

## CARL N. BYERS, Judge.

Atlantic Richfield Company (ARCO) appeals the Department of Revenue's (department) assessments of additional corporate excise taxes for tax years 1981, 1982, 1983 and 1984. The department audited ARCO's tax returns and made a number of adjustments, resulting in the assessments. ARCO appeals only the disallowance of net losses attributable to fluctuations in foreign exchange rates. This matter is before the court on stipulated facts and cross motions for summary judgment.

ARCO is a Delaware corporation engaged in business worldwide through its branches and subsidiary corporations. Because ARCO and its subsidiary corporations are a unitary business, ARCO files combined Oregon income tax reports. ARCO's combined reports for 1981 through 1984 included the income of its foreign subsidiaries. When foreign subsidiary transactions are undertaken or recorded in a foreign currency, both federal and state income tax laws require the financial results to be "translated" and reported in the currency of the United States. The process of translating foreign gain or loss into U.S. dollars is not simple. Fluctuations in exchange rates between the beginning and ending of transactions or reporting periods can result in exchange rate gain or loss, complicating the calculation of reportable gain or loss.[1] To address these complications, different accounting methods have been developed to translate foreign financial results into U.S. dollars.

In 1978, ARCO obtained permission from the Internal Revenue Service to use the temporal method for translating its foreign income.[2]

The stipulation states:

"Under the net worth, or temporal, method of accounting, certain financial statement items were converted into U.S. dollars using current exchange rates while others were

---

[1] The terms "exchange gain or loss," "exchange rate gain or loss," and "translational gain or loss" are used interchangeably throughout the materials and literature. They all refer to the gain or loss arising solely from fluctuations in the foreign exchange rate.

[2] The IRS allowed ARCO to use the temporal method beginning with the 1976 tax year.

translated at historical rates. For those items that were translated using a current exchange rate, if the foreign currency had lost value relative to the U.S. dollar between the time of any given transaction and the end of the accounting period, that decline in value was reflected in the financial statements as a loss (in the case of assets) and a gain (in the case of liabilities) even though the transaction (for example, the collection of an account receivable or payment of an account payable) had not yet been completed."

ARCO used the temporal method for all of its subsidiaries and branches for the tax years in issue. During those years, Brazil had a hyperinflationary economy and, in Ireland, the U.S. dollar was the functional currency. ARCO's use of the temporal method resulted in exchange rate gains for its Ireland subsidiary two of the years in issue, and losses for its Brazil subsidiaries all of the years in issue, causing an overall net exchange rate loss for each year.

In auditing ARCO's combined returns, the auditor disallowed the net exchange losses because "Oregon has no provision in its law that allows either gain or loss from unrealized transactions to be included in income." ARCO appealed to the department which, after hearing, issued Opinion and Order No. 91-0253 denying ARCO's appeal. ARCO timely appealed from that order to this court.

## ISSUE

The issue is whether the department can disallow temporal method net translation losses on the ground that those losses include some unrealized gains and losses.

## BACKGROUND

Prior to the Tax Reform Act of 1986, companies used a variety of methods to translate foreign financial results into U.S. dollars. The transaction method, which converted each transaction into U.S. dollars at the end of the transaction, involved burdensome record-keeping requirements. The net worth, or temporal, method essentially compared the value of the company's net worth, as translated into U.S. dollars, at the beginning of the reporting period with the net worth at the end of the reporting period. The difference, which included both operating profit or loss and exchange rate gain or loss, was the amount of gain or loss to be

reported for income tax purposes. To facilitate understanding the complexity of translation, consider how the translational loss is calculated.

In preparing year-end financial statements, companies using the temporal method specify on their income statements the amount of income or loss attributable to fluctuations in the exchange rate. To do this, the company converts each item on the income statement into dollars using various exchange rates. *See* Thomas A. Ratcliffe and Paul Munter, *Currency Translation: A New Blueprint*, J of Accountancy 82, 89-90 (June 1982). This dollar-value net income figure is then added to the dollar value of the retained earnings at the beginning of the year. The company then converts the balance sheet items at the end of the year into dollars, using current or historical rates depending upon the item converted. A year-end retained earnings figure is derived by subtracting the liabilities and capital stock of the company from the assets. To calculate the amount of translation gain or loss, the dollar value of the year-end retained earnings, as calculated from the balance sheet, is compared with the dollar value of the net income (excluding translational gain or loss) plus beginning retained earnings figure. If the year-end retained earnings are less, the difference is translation loss. When preparing the income statement, this translation loss is subtracted in calculating net income. This translation loss figure is the amount the department disallowed as unrealized.

As with most accounting problems, there are alternative translation methods, and each method bears its own benefits and burdens.

> "In certain circumstances, taxpayers could choose from among various optional translation methods, and substantially different U.S. tax consequences often resulted depending upon the method selected. In such cases, the primary limit on a U.S. taxpayer's selection of a foreign currency translation method was whether the method selected resulted in the clear reflection of income. Once a method was selected, any change in that method was considered a change in accounting method to which §§ 446 and 481 applied." *Tax Aspects of Foreign Currency*, Tax Mgmt (BNA), No. 921, at A-112. (Footnotes omitted.)

The methods are not without their conflicts and critics. For example:

"The net worth method was criticized because it resulted in the recognition of unrealized exchange gains or losses, contrary to basic principles of federal income tax law. In addition, the method was difficult to apply because item-by-item historical exchange rate information had to be maintained for all long-term assets and liabilities. Finally, because no distinction was made between operating income and exchange gains and losses, the method failed to allow for the characterization of such gains or losses as capital or ordinary." *Id.* at A-113. (Footnotes omitted.)

Some critics maintain, as does the department, that to recognize translational gains and losses is contrary to principles of basic taxation. However, as one commentator observed:

"To recognize exchange rate gain or loss only when an underlying transaction requires recognition of foreign money gain or loss, but not where exchange rate gain or loss occurs separately from foreign money gain or loss, seems arbitrary." Donald R. Ravenscroft, *Taxation of Income Arising From Changes In Value Of Foreign Currency*, 82 Harv L Rev 772, 778 (1969).

In 1980, the United States Treasury Department studied the problem and published a proposed system for taxing exchange gains and losses, which it acknowledged might require changes in the law. 45 Fed Reg 81,711 (1980). It discussed specific translation methods and provided examples using those methods. Eventually, Congress resolved most of the questions with provisions in the Tax Reform Act of 1986, which contained specific translation rules and addressed previously uncertain areas.

It is important to keep in mind that during the years in question, 1981 through 1984, substantial uncertainty and conflicting views existed with regard to the translation of foreign currency and the recognition of translational gains and losses. It would be unfair to use the hindsight of subsequent developments to determine the standards applicable to ARCO during the years in question. It is also important to keep in mind that the laws of Oregon changed during the subject years.

## 1981-82 LAW

### In 1981 and 1982, ORS 317.160 provided:

"The net income shall be computed upon the basis of the taxpayer's annual accounting period * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer, but if such method employed does not clearly reflect the net income the computation shall be made in accordance with such method as the department may prescribe to reflect the net income."

The rules noted that "[a]pproved standard methods of accounting will ordinarily be regarded as clearly reflecting income." OAR 150-317.160-(B). The rule also stated:

"It is recognized that no uniform method of accounting can be prescribed for all taxpayers, and the law contemplates that each taxpayer shall adopt such forms and systems of accounting as are best suited to its purpose." OAR 150-317.160-(C).

As the stipulation states, ARCO followed accepted accounting practices in recording its foreign subsidiary financial results. The Financial Accounting Standards Board (FASB) in Statement No. 8, for 1981, and in Statement No. 52, for 1982 through 1984, addressed how companies were to handle translation adjustments. ARCO applied these approved methods of accounting to all of its subsidiaries and branches for the years in question. The parties also stipulated that FASB 52 required companies to use the net worth or temporal method for subsidiaries in countries with hyperinflationary economies or where the U.S. dollar was the functional currency.

### 1983-84 LAW

In 1983, the Oregon Legislature added ORS 317.013, which adopted by reference all portions of chapter 1, Subtitle A of the Internal Revenue Code pertaining to corporations. In ORS 317.018, the legislature expressed its intent:

"(1) To make the Oregon corporate excise and income tax law, insofar as it relates to the measurement of taxable income, identical to the provisions of the federal Internal Revenue Code * * *.

"(2) To achieve the results desired under subsection (1) of this section by application of the various provisions of the

federal Internal Revenue Code relating to the definitions for corporations, of income, deductions, *accounting methods*, accounting periods, taxation of corporations, basis and other pertinent provisions relating to gross income." (Emphasis added.)

The action of adopting portions of the Internal Revenue Code by reference resulted in the adoption of Subpart F, which is Sections 951 through 964 of the Internal Revenue Code.[3] However, the legislature recognized that Subpart F income is not consistent with the use of combined reports. Application of both provisions would cause the foreign subsidiary's earnings to be accounted for twice: once as income to the parent in the form of a constructive dividend (Subpart F) and once as the income of the foreign subsidiary. Consequently, ORS 317.288 provides that income which is included by virtue of Subpart F is to be excluded from Oregon income to the extent the foreign corporation is included in a combined report. The purpose of this statute is simply to avoid double counting the foreign income.

## COURT'S ANALYSIS

■    In its audit and at the hearing, the department did not challenge ARCO's temporal method of accounting. The department could require ARCO to use a different method of accounting if it found that the method did not clearly reflect income. ORS 317.160; IRC § 446(b). Instead, the department disallowed the reported net losses as "unrealized." The general principle that unrealized gains and losses are not recognized for purposes of income taxation is reflected in the language used in the Oregon statutes, such as ORS 317.210, 317.270 and other sections. There is no real question on this point. However, the fundamental question is whether the legislature intended this general principle to apply to gains and losses resulting from the use of the temporal method to translate foreign financial results. The court concludes that it did not.

■ ■    Translation is not a transaction. The principle of nonrecognition applies to transactions that are incomplete or

---

[3] Sections 951 through 964 of the Internal Revenue Code taxes U.S. shareholders (including corporate shareholders) of foreign corporations on dividend income which, under Subpart F rules, may be only constructively received.

open, making the gain or loss unrealized. As expressed by one author, realization is an event. Daniel Q. Posin, *Federal Income Taxation* 146 (1983). First applied by the courts and later incorporated into the statutes, the concept of realization looks for some consequence, *e.g.*, the severance of an interest, change in position, or economic consequence, that justifies recognizing the event for purposes of income taxation. Under the principle of nonrecognition, until such an event occurs, the taxpayer cannot recognize the tax consequences from the transaction.

■       In comparison, the translation of foreign income into U.S. dollars is not a single transaction or even a series of transactions. Translation is a complex process of converting financial results from one currency into another. The financial results are not just a bottom line gain or loss, but the entire financial picture for the year. At the end of the tax period, when those final results are translated into U.S. dollars, there may be exchange gains or losses. Some of that gain or loss may be unrealized in the sense that actual conversion of the underlying assets from one currency into another has not occurred. However, taxes are imposed annually and must be paid in U.S. currency. It is these conditions that require companies to translate their foreign results into dollars. If no adjustments are made for translational gains and losses, a taxpayer may, in a true economic sense, pay tax on more income than earned.

The temporal method of translation causes, by virtue of the method, recognition of translational gains and losses, some of which may be realized and some unrealized.[4] Yet, the IRS approved this accounting method for federal income tax purposes. ARCO used the temporal method of translating foreign currency a number of years prior to the years in question for both financial and income tax reporting. The clear intent of the Oregon Legislature from 1983 on was to make Oregon's measure of net income identical to the federal measure of income. Accordingly, the court finds that the Oregon Legislature intended that the taxpayer be allowed to use the accounting method involved here and to recognize the results produced by that method.

---

[4] At oral argument, the department admitted that some of the translation losses may be realized.

In summary, translating financial results from a foreign currency into dollars is complex. Achieving a good solution is difficult because translation utilizes accounting methods with various characteristics and merits. If the department determines that an accounting method does not clearly reflect a taxpayer's income, it may require the taxpayer to use another method. Likewise, the department may disallow recognition of gain or loss from an incomplete transaction. However, the department may not disallow the results of a method of accounting just because some of the underlying transactions may be incomplete. Considering the context of the state statutes and how the temporal method operates, the court concludes that the legislature did not intend to authorize the department to disallow, in a piecemeal fashion, some of the method's results.

The court finds that the department may not disallow net translational losses resulting from ARCO's use of the temporal method of translating foreign currency into U.S. currency. The department's Opinion and Order No. 91-0253 must be modified and the tax liabilities recalculated. Now, therefore,

IT IS ORDERED that ARCO's Motion for Summary Judgment is granted, and

IT IS FURTHER ORDERED that department's Motion for Summary Judgment is denied.

Plaintiff to recover costs.